[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On March 19, 1998, the Department of Children and Families (hereinafter DCF) filed applications for orders of temporary custody and neglect petitions concerning the subject mentioned children.
Both applications for orders of temporary custody alleged that the child was in immediate physical danger from surroundings and that the immediate removal from such surroundings was necessary to insure the safety of said child.
The accompanying neglect petitions both allege that the child was neglected in that the child was being denied proper care and attention, physically, educationally, emotionally or morally.
On April 27, 1998, DCF moved to amend the neglect petition to add allegations that the children have been permitted to live under conditions, circumstances or association injurious to their well being.
There was no objection to the amendment and the motion is granted.
Ex parte orders of temporary custody having been issued on March 19,, 1998, the matters came before this court on April 28, 1998, for hearing on the temporary custody order in accordance with General Statutes § 46b-129(b). All necessary parties being present in court and represented by counsel, it was stipulated and agreed that, since the evidence would be the same, the court should adjudicate the issue of neglect as well as the temporary custody order. CT Page 5125
From the evidence and the logical inferences which may be drawn from such evidence, the following facts are found by a fair preponderance of the evidence.
The child Patrick was born July 22, 1991, and Zachary was born July 19, 1994. Both children were born premature and had past medical problems.
The parents are married but now separated with a divorce in process. Custody of the children appears to be a contested issue in the divorce and an attorney has been appointed in that action to represent the children.
The mother has always been the primary care giver of the children and the children were with her until removed under the ex parte order.
The mother has a long history of mental problems. She suffers from multiple personality disorder with at least six separate personalities. One of these personalities, "Marianna," has been described as mean and she "spews venom." The mother testified in that case, but her testimony is not completely trustworthy.
The mother has had prior involvement with DCF concerning the children, but there is no evidence that such involvement has a direct bearing on these proceedings.
Janis Courter, a social worker acting for DCF, who investigated this case testified to the effect that mother suffers from Munchausen Syndrome by Proxy (fictitious disorder by proxy). This is a mental disorder, the essential feature of which is the deliberate production or feigning of physical or psychological signs or symptoms in another person who is under the individual's care. Typically, the victim is a young child and the perpetrator is the child's mother. Diagnostic and StatisticalManual of Mental Disorder, Fourth Edition (DSM-IV), page 725. Ms. Courter, who had studied this disorder in graduate school, testified to a number of factors which tended to show that the mother suffered from this disorder. The evidence however, does not permit a conclusive finding that the mother, in fact, does suffer from the disorder.
There was reliable direct and circumstantial evidence leading to the conclusions that on a number of occasions the mother purposefully over medicated or attempted to over medicate the CT Page 5126 children.
In January and March, 1998, the mother misled doctors in an attempt to obtain unprescribed antibiotics for the children.
The evidence indicated that she over medicated Zachary who had been diagnosed with a general seizure disorder. The evidence indicates that one such incident occurred while the mother was with the child in the hospital. This resulted in a doubling of the child's Dilantin level and constituted a substantial danger to the child's health and well being.
There was a question as to whether or not the child has been given a Nortriptaline tablet which could have been fatal. The evidence on this point, however, is not conclusive since the tablet could have been dropped by the mother into the child's vomit by accident.
While at the hospital the mother was observed to be searching in trash and other places for medications.
The mother's conduct with respect to the children was such that the doctors treating the children and the home care nurse who visited the home and helped care for the children were concerned with the mother's ability to care for the children and feared that she may be harming them.
Accordingly, it is found by a fair preponderance of the evidence that the allegations of the application for order of temporary custody have been proven and the order previously issued is continued.
It is also found that the allegations of the neglect petition, as amended, have been proven by a fair preponderance of the evidence and the matter is continued for a dispositional hearing.
Joseph J. Purtill Judge Trial Referee